IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| SUMIKO BESSER,<br>an individual | ) ) | CIVIL NO. CV07-00437 SOM BMK |
| Plaintiff, | ) ) ) | PLAINTIFF'S MEMORANDUM OF<br>LAW IN SUPPORT OF MOTION |
| vs. | ) ) | FOR DISCOVERY |
| PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA; A For-<br>Profit Corporation, | ) ) ) ) | |
| Defendants. | ) | |

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR DISCOVERY

Plaintiff, SUMIKO BESSER (hereinafter "Mrs. Besser"), by and through her undersigned counsel, files this Memorandum of Law In Support of Motion For Discovery (hereinafter "Memorandum of Law"), pursuant to Local Rule 7.2 (f), and states as follows:

I.  BACKGROUND

Mrs. Besser filed suit against Prudential seeking entitlement to long-term disability benefits since November 7, 2004, pursuant to the Group Disability Policy (hereinafter "the Plan") and based on Prudential's breach of contractual obligations under the Plan and violations of the full and fail review requirement under The Employer Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

1

§1133(2).  Prudential filed its Answer and Affirmative Defenses on October 22, 2007.

The parties are unable to agree to the issue of whether discovery on conflict of interest is appropriate in this case and as such, and based on Judge Kurren's suggestion at the Scheduling Conference, Mrs. Besser, simultaneously with this Memorandum of Law, filed a Motion For Discovery seeking discovery on the issue of conflict of interest, along with a Declaration In Support of Motion For Discovery.

## II. STANDARD OF REVIEW

When a plan confers discretionary authority on an administrator, the abuse of discretion standard of review applies. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989); *Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955, 963 (9th Cir. 2006).  When a plan grants power to interpret plan terms or render final benefit determinations, the Ninth Circuit has held that such language confers discretion on the administrator. *Abatie,* 458 F.3d at 963. It is well established by Circuit that in an ERISA case where the carrier is both payor of benefits and plan administrator with the right to determine eligibility for benefits and construe the terms of the plan, an apparent conflict of interest exists. *Id*. at 967.

The Plan at issue in this case, Exhibit "A" attached, confers discretion on Prudential, as Prudential "[H]as the sole discretion to interpret the terms of the Group

Contract, to make factual findings, and to determine eligibility for benefits." Exhibit "A." Thus, the abuse of discretion standard of review applies[1].  For the purposes of this Memorandum of Law and supporting Motion, Mrs. Besser will assume that the standard of review is abuse of discretion.

## III. ARGUMENT

### A. Granting Discovery On Conflict Of Interest Is In The Court's Discretion In An ERISA Action Under The Abuse Discretion Standard

Where the carrier is both the payor of benefits and plan administrator, an structural conflict of interest exists. *Abatie*, 458 F.3d at 967.  It is well-settled in this Circuit that discovery in an ERISA case beyond the administrative record is within the court's discretion where there is a structural conflict of interest, in order to establish how much deference the court should give to a conflicted carrier's decision to deny a claim for benefits. *Id.* at 967-970. *See also Tremain v. Bell Indust., Inc.*, 196 F.3d 970, 976-77 (9th Cir. 1999); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (holding that  "[b]ecause an ERISA plaintiff may be permitted to supplement the administrative record with evidence of conflict . . . on the part of the defendant, *see Tremain*, we agree with Welch that *some* discovery aimed at demonstrating a conflict . . . may have been appropriate.") (citation omitted); *McCurdy v. Metro. Life Ins. Co.*, No. CIV S-05-0634 WBS EFB, 2007 U.S.

---

[1] For purposes of this Memorandum of Law and barring Mrs. Besser's ability to prove substantial procedural irregularities, warranting a de novo review, which is not at issue at this time.

Dist. LEXIS 25917, at *5 (E.D. Cal. March 23, 2007) (holding that "[g]iven the appropriateness of considering . . . extrinsic evidence on the conflict questions, it logically follows that a party . . . is entitled to conduct discovery beyond the scope of the administrative record – even if only for the limited purpose set forth in *Abatie*"). *See also Linich v. Broadspire Services, Inc*., No. CV 05-2983-PHX-MHM, 2007 U.S. Dist. LEXIS 19295, at *17 (D. Ariz.  March 15, 2007) (holding that "[I]in light of *Abatie*, the Court finds that Plaintiff has a valid claim for discovery outside the administrative record regarding the conflict of interest . . . . ") .

## B. Mrs. Besser Is Entitled To Discovery Outside The Administrative Record Based On Prudential's Apparent Conflict Of Interest

There is no requirement that an ERISA plaintiff to make a showing of conflict beyond the structural conflict of interest, in order to be entitled to discovery to explore the administrator's conflict of interest under the abuse of discretion standard of review. Further*, Abatie* took away a plaintiff's burden to provide proof of evidence of the administrator's conflict of interest, considering, "[T]hat an ERISA plan participant is much less likely to possess [such evidence] than is the administrator." *Abatie*, 458 F.3d at 967. Notwithstanding, Mrs. Besser will set forth several reasons why discovery as to Prudential's apparent conflict of interest is warranted.

//

According to the Ninth Circuit in *Abatie*,

> Going forward, plaintiffs will have the benefit of an abuse of discretion review that always considers the inherent conflict [**32] when a plan administrator is also the fiduciary, even in the absence of "smoking gum" evidence of conflict. Moreover, a conflicted administrator, facing closer scrutiny, may find it advisable to bring forth affirmative evidence that any conflict did not influence its decisionmaking process, evidence that would be helpful to determining whether or not it has abused its discretion.

*Id*. at 969. Considering that Prudential is both the payor of benefits and has unambiguous discretion to render final eligibility determinations and construe plan terms (as evidenced in the Plan, Exhibit "A" attached and as alleged in Mrs. Besser's Complaint), there is an apparent conflict of interest in this case. *See Bruch*, 489 U.S. 101.

The Ninth Circuit and sister district courts therein have held that limited discovery outside the administrative record on the existence, nature, and extent of a conflicted administrator is appropriate for the court to consider in order to determine the level of scrutiny to apply to the administrator's decision to deny a claim for benefits. *Abatie*, 458 F.3d at 970; *see also Tremain*, 196 F.3d at 976-77*; see generally Welch,* 480 F.3d at 949. In *Toven,* the Ninth Circuit stated,

> The Court is at a loss to understand how evidence of a claims' adjuster's credibility, or of that of the consultant, can be determined solely from the administrative record. In the Court's view, the rationale of *Abatie* leads inevitably to the conclusion that discovery beyond the administrative records now must be allowed.

No. CV 06-07260 ABC (RZx), 2007 U.S. Dist. LEXIS 71161, at *4. Based on the foregoing, the *Toven* court denied the carrier's motion for protective order finding "[N]o basis for prohibiting discovery." *Id*. at *5. *See also Beckstrand v. Elec. Arts Group Long Term Disability Ins. Plan*, No. 05-cv-0323-AWI-NEW (TAG), 2007 U.S. Dist. LEXIS 43643 (E.D. Cal. June 4, 2007) (granting the claimant's motion to reopen the record to permit discovery). In *Becksrand*, the court held that,

> [U]nder the new analytical approach set forth in *Abatie*, extrinsic evidence is admissible not as a part of a burden-shifting paradigm, but as a factor for the district court to weigh in determining what effect, if any, a conflict of interest or procedural irregularity will have on the level of deference to be accorded the administrator's decision.

*Id*. at *14.  The court further held that discovery that would lead to evidence of the plan's record of denying benefit claims, continuously retaining doctors who render favorable opinions for the carrier and standards or protocols which administrators followed, now "[G]oes to the deference that the court will use in reviewing the merits of the case and thus, is relevant and admissible under *Abatie*." *Id*. at *15. Thus, the court entered an order permitting plaintiff's discovery, which included interrogatories questioning: the doctor's training and experience treating patients with the condition plaintiff suffered from; the number of patients the doctor treated with the same condition as plaintiff and during the same timeframe of plaintiff's claim; the number of disability claims the doctor evaluated at the carrier's request since the date of the plaintiff's claim; how many times the doctor concluded that

claimants were disabled versus not disabled; and a description of all contacts and communications  regarding the claimant between the carrier and doctor, directly or indirectly, which are not documented in the administrative record.  *Id*. at *5-6. The court also ordered defendant to respond to plaintiff's request for production of documents which provided for certain dates relevant to the claim and included: all documents regarding the carrier's claims and training manuals, or any other documents setting forth the carrier's standards, practices, protocols, or criteria for evaluating disability and/or long term disability claims; all documents regarding the carrier's practices, procedures or protocols for processing appeals of denials of terminations of long term disability claims; all documents regarding the carrier's standards, criteria, protocol, or rules regarding evaluation of claimants who have the same illness as the plaintiff; all documents regarding the carrier's standards, criteria, or protocol regarding the weight to be accorded to Social Security Disability determinations.  *Id*. at *7.

In *Harper v. Unum Life Insurance Company of America*, the plaintiff sought discovery including the deposition of the carrier's employees referred to in the administrative record.  No. 1:06cv0893 AWI DLB, 2007 U.S. Dist. LEXIS 47533, at *16-18 (E.D. Cal. June 18, 2007). The court held that the plaintiff was entitled to discovery which "explores the structural conflict of interest," but not entitled to discovery that seeks information that  "[I]s aimed at  exposing how and why the

decisions were made or whether the decision was correct." *Id*. at *12-14. The court further held that plaintiff's discovery request as to "the compensation of the carrier's in-house medical personnel, and what percentage of their total salaries is provided by defendant, is relevant to the nature, extent and effect of the conflict of interest. *Id* at *13.

In *McCurdy*, the court granted plaintiff's request to conduct discovery outside the administrative record in part, and allowed discovery requests including: copies of all documents of insurance reflecting the plan coverage involved; all documents regarding plaintiff's claim not a part of the administrative record, documents regarding the reserve set or mandated; procedural manuals pertaining to the time period during which plaintiff's claim was processed; and the names, addresses, and telephone numbers of all individuals who provided medical or vocational information referring to the administrative determination of plaintiff's claim, and of all individuals who authored, advised, supervised, or contributed to the writing of, the administrative denials of that claim. *McCurdy*, 2007 U.S. Dist. LEXIS 25917, at *6-14.

Consistent with the Ninth Circuit and sister district courts therein, as well as the modern trend, Mrs. Besser seeks and is entitled to discovery beyond the Record to determine the existence, nature and extent that Prudential's apparent conflict of interest had upon its decision-making.

**1. Missing Documents From The Administrative Record Evidence Prudential's Conflict Of Interest May Have Affected its Decision-Making and Warrants Discovery On Such Conflict**

Prudential hired Pattrick Foye, M.D., LLC, to conduct an "independent file review," as evidenced in the cover letter from Prudential to Dr. Foye dated January 4, 2005. (Exhibit "B"). This letter is addressed to Dr. Foye, but does not contain any address or fax number to show how it was sent, if it was sent, to Dr. Foye. *Id.* Thus, it is assumed that this letter was not the final version. *Id.* Based on same, Mrs. Besser should be entitled to discovery of all communications between Prudential and Dr. Foye. Further, simply based on the fact that Prudential relied on Dr. Foye's "independent" medical record review in denying Mrs. Besser's claim, and considering Prudential's apparent conflict of interest, Mrs. Besser should be entitled to discovery on such conflict.

Next, in Dr. Foye's Report, Exhibit "C" attached, he lists medical records that he reviewed, yet such records are not enclosed with the January 4, 2005 correspondence from Prudential to Dr. Foye, as they do not appear in sequential order after the cover letter in the Administrative Record (hereinafter "the Record"). (See Exhibits "B", "C" & "D").  The purported cover letter to Dr. Foye is marked as a part of the Record by Prudential as PRU-BES 1049, and the documents contained in the Record immediately thereafter (as well as the rest of the sequential documents), marked PRU-BES is 1050-1062, are comprised of letters to Mrs.

Besser from Prudential and facsimile coversheets to Mrs. Besser's doctors, but no medical records as evidenced in Exhibit "D"). Thus, Prudential either failed to enclose such records with this letter, if such letter was actually sent, or removed such records and the final letter it sent to Dr. Foye, from the Record. Either way, Mrs. Besser is entitled to discovery as to all communications between Prudential and Dr. Foye, considering it Prudential's apparent conflict of interest in addition to the aforementioned reasons.

Next, at the top of page 6 of Dr. Foye's Report, he references under Number 9 of the records he reviewed, "Prudential phone logs: There is a print out of several pages of DCMS 'telephone call log.'" (Exhibit "E").  However, no such phone log is enclosed with the cover letter from Prudential to Dr. Foye in the Record. Further, the phone logs that are contained elsewhere in the Record do not evidence they were sent to Dr. Foye. Moreover, the phone logs contained in the Record, Exhibit "F" attached, are not the type of records typically provided or relevant to an "independent" medical review. Also, Dr. Foye does not address or summarize such logs in his Report, although he lists it as a record he "reviewed" (Exhibit "C"). Thus, discovery on such records and any other communications between Prudential and Dr. Foye is appropriate considering: the aforementioned reasons; that Prudential relied upon Dr. Foye's medical review; and based on Prudential's apparent conflict of interest. Further, any bias of Prudential's experts would not

necessarily be on the face of the documents contained in the Record, lending further reason to allow Mrs. Besser to conduct discovery on the issue of conflict. Moreover, considering Prudential is in charge of the actual Record, there is not way for Mrs. Besser to verify what Prudential removed from or failed to add to the Record, and as such discovery on the issues on conflict will allow verification of same, which goes to the issue of Prudential's conflict of interest.

Another reason to allow discovery into the issue of conflict of interest has to do with Prudential's correspondence with Medical Resource Group, Inc. ("MRG"), who Prudential hired to obtain an "independent" review of the file by Dr. Diamond.[2] (Exhibit "F"). Prudential sent a letter to MRG dated October 27, 2006, which also fails to contain, at least in sequential order after the cover letter or in any manner in the Record to evidence what documents were provided by Prudential to MRG for Dr. Diamond's review. Likewise, the first letter from Prudential to MRG dated October 31, 2005 states, "All documentation has been provided for this review," although no specific enclosures are cited in the body of the letter or after the signature line to indicate records were enclosed and none appear directly after the cover letter to MRG. *Id.* Thus, it appears that correspondences between Prudential MRG and/or Prudential and Dr. Diamond may be missing from the Record. Considering the aforementioned and that:

---

[2]  Dr. Diamond performed an Independent Medical Examination of Mrs. Besser on Prudential's behalf in 2005, which Prudential relied upon in its denial of benefits.

Prudential relied upon Dr. Diamond's reports to deny Mrs. Besser's claim, Prudential's apparent conflict of interest, its control over the Record, and the fact that any bias of Prudential's experts would not necessarily be contained in the Record, Mrs. Besser should have the right through verified discovery, to all communications between Prudential, MRG and Dr. Diamond, in addition to the amount of cases Dr. Diamond reviews for Prudential, the amount of times he agrees a claimant is disabled versus not and the amount of cases with similar conditions to Mrs. Besser that he reviewed. *Toven*, 2007 U.S. Dist. LEXIS 71161, at *4; *Beckstrand*, 2007 U.S. Dist. LEXIS 43643, at *5-7, 14-15; *Harper*, 2007 U.S. Dist. LEXIS 47533, at *13, 16-18; *McCurdy*, 2007 U.S. Dist. LEXIS 25917, at *6-14.

### 2. Prudential's Mischaracterization Of Records Evidences Its Conflict Of Interest May Have Affected Its Decision-Making And Warrants Discovery On Such Conflict

Prudential relied upon an "independent" paper reviewer, Dr. Foye, who never treated or spoke to Mrs. Besser or her treating physicians, but rendered his opinion as to Mrs. Besser's physical and cognitive conditions and her ability to perform the material and substantial duties of her regular occupation, which is unsupported by the medical information that he "reviewed". (Exhibit "C"). Further, Dr. Foye failed to credit Mrs. Besser's reliable evidence and mischaracterized the

medical evidence.[3] The records that Dr. Foye reviewed focused on small portions of the documents, taking much of them out of context or failing to consider relevant diagnosis, physical examination findings, subjective complaints of pain, prescribed pain medication, and doctor's orders to stay out of work. (Exhibits "C", "G", "H", "I" & "J"*)* For example, in Dr. Foye's review of the medical records, he cites to Dr. Portner's medical report dated October 29, 2001, but fails to consider and/or recite the following important facts listed in Dr. Portner's record: a diagnosis of probable cervical disc derangement and right occipital neuralgia, complaints of some dizziness and blurred vision (with headaches), pain level of 7 out of 10, worse pain over last year, morning stiffness, and the fact that Dr. Portner prescribed Celebrex and Vicodin for "severe pain". (Exhibits "C" & "G"). Similarly, Dr. Foye fails to report several significant findings listed in Dr. Portner's January 10, 2002 record which includes that Mrs. Besser is taking Vicodin for pain as needed and that "on exam range of motion of the cervical spine is painful and limited on extension and rotation to the right." (Exhibits "C" & "G"). Likewise, Dr. Foye fails to list the physical examination findings and diagnosis contained in Dr. Portner's February 14, 2002 record which provides that "Examination of the

---

[3] The list of missing relevant findings provided herein providing examples of Dr. Foye's failure to recite relevant opinions of Mrs. Besser's treating physician's is not an exhaustive list, but suffice to provide ample and consistent examples of Dr. Foye's failing to recite or consider relevant information contained in Mrs. Besser's medical records.

cervical spine reveals limited and painful extension. Flexion is nearly full but painful. Bilateral side bearings and rotations are limited and painful with worsening of her symptoms more on the left side rotation." (Exhibits "C" & "G"). Dr. Portner's diagnosis of Cervical Spine Dysfunction and prescription of Vicodin and Aleve are also missing from Dr. Foye's Report. (Exhibits "C" & "G"). Similarly, Dr. Portner's March 7, 2002 record which provides relevant and significant findings and complaints, including being prescribed "Medrol Dose Pak considering the acute nature of the problem," Vicodin, a medical certificate for off work until the next follow-up on March 13, 2002, an impression of lumbar Disc Derangement, are all missing from Dr. Foye's Report. (Exhibits "C" & "G"). Likewise, Dr. Foye's Report fails to note the November 6, 2002 physical exam findings which included thoracic pain in left shoulder and bilateral rotator pain, extension of the neck painful and limited and the diagnosis of chronic cervical spine dysfunction with recent onset of thoracic spine dysfunction disc derangement. (Exhibits "C" & "G"). Further, in Dr. Foye's recitation of Dr. Portner's October 1, 2004 visit which recites the findings of a cervical MRI taken September 30, 2004, he fails to list any of the MRI findings. (Exhibits "C" & "G"). While the cervical MRI findings are listed in a different section of Dr. Foye's Report, it is curious that he fails to recite the finding of C6-7 moderate right greater than left neuroforaminal narrowing due to osteophyte, and only recites the "mild"

14

findings. (Exhibits "C" & "G"). Also curious is Dr. Foye's selective use of underlines and bold typeface for any "normal" studies and other statements, while not providing the same emphasis on any supportive findings or opinions for Mrs. Besser's claim. (Exhibit "C").

Based on the foregoing, discovery into Prudential's apparent conflict of interest and its expert's bias is warranted. Irrespective of such circumstances alleged herein, discovery into expert's credibility should be afforded to an ERISA plaintiff considering: such information is not the type of information contained in the administrative record, and is relevant in a case with a conflicted administrator and that Prudential as a conflicted administrator is in charge of the Record. *Toven*, 2007 U.S. Dist. LEXIS 71161, at *4; *Beckstrand*, 2007 U.S. Dist. LEXIS 43643, at *5-7, 14-15; *Harper*, 2007 U.S. Dist. LEXIS 47533, at *13, 16-18; *McCurdy*, 2007 U.S. Dist. LEXIS 25917, at *6-14.

Next, Dr. Foye asserts in his Report and Prudential echoes in its denial of benefits letter dated January 27, 2005, that Mrs. Besser's complaints of pain are "inconsistent" with her objective test results. (Exhibits "C" & "H"). Dr. Foye and Prudential go as far as to insinuate that Mrs. Besser is exaggerating her pain and suggest that Mrs. Besser's treating physicians have indicated as follows:

> Dr. Obana pointed out that your symptoms did not match with the MRI findings, and based on those inconsistencies he recommended against the surgery, and he discharged you from his care. Dr. Krushelnycky also appeared to reach the same conclusion, that your

> subjective findings did not match with any objective anatomic
> etiology, and thus he also discharged you back to the primary
> physician.

(Exhibit "H" & "I"). The statement that "Dr. Obana pointed out that [her]

symptoms did not match with the MRI findings, and based on those inconsistencies

he recommended against surgery," is not what Dr. Obana stated. What Dr. Obana

stated was :

> Mrs. Besser has chronic left neck pain and left upper extremity
> sensory changes. Her pain is likely due to a combination of
> musculoligamentous dysfunction and cervical degenerative disease.
> Her left upper extremity sensory changes could be radicular involving
> the left C7 nerve root, although the abnormalities on the cervical MRI
> scan at C6-7 are mild on the left side and moderate on the right side.
> It is difficult for me to treat her current symptoms to any specific
> abnormality on her cervical MRI scan.  I reviewed her condition and
> imaging studies with her and went over management.  I told her I do
> not recommend any type of surgical treatment. Acupuncture treatment
> is worth a try if she can afford it.  I am not sure what else can be done
> for her from a neurosurgical standpoint.  She will continue to see Dr.
> Krushelnycky and Dr. Portner.  I will see her again as needed.

(Exhibit "J".)   Dr. Obana specifically stated that Mrs. Besser is experiencing

"chronic left neck pain and left upper extremity sensory changes" and explained

that her constant pain is due to a "combination of musculoligamentous dysfunction

and cervical degenerative disease" and "[h]er left upper extremity sensory changes

could be radicular." *Id*. He further states that in his opinion, he cannot treat Mrs.

Besser's persistent pain, surgically. *Id*. Dr. Obana never stated that Mrs. Besser's

complaints of pain were inconsistent or suggested that she was exaggerating her

symptoms.  He admits she has pain, but explains that he is unable to help her with surgery. *Id*. The fact that Dr. Obana feels that he is unable to help Mrs. Besser with surgery, does not equate to an inconsistency. Dr. Obana even suggested other possible forms of treatment to relieve her persistent pain. Thus, Dr. Foye and Prudential's aforementioned assertion is a misrepresentation of Dr. Obana's words and suggests that Dr. Foye was bias and that Prudential's apparent conflict of interest affected its decision in this case. As such, discovery is appropriate on the issue of such conflict of interest and bias of Dr. Foye.

Similarly, Dr. Foye and Prudential again suggest that Mrs. Besser is exaggerating her pain, as her complaints "do not match" her MRI findings and thus, Dr. Kruushelnycky released her from his care. (Exhibits "C", "H" & "I"). Again, this is a misrepresentation of Dr. Krushelnycky's statement. Dr. Krushelnycky explained that Mrs. Besser did not experience positive results from any of the treatments that he tried and that Mrs. Besser continued to experience severe and debilitating pain, with little or no improvement with treatment. (Exhibit "I"). After reviewing Prudential's report and the inferences made, Dr. Krushelnycky felt compelled to clarify his statements

> "I believe that Mrs. Besser was experiencing pain during her consultation as well as subsequent follow up examinations with me.  I do <u>not</u> believe that she misrepresented her pain at any time during this diagnostic workup. To the best of my knowledge, I never had a sense

that Mrs. Besser was trying to deceive me with regards to her symptoms."

(Exhibit "J").

Considering Prudential and its expert misrepresented statements while cherry-picking others made by Mrs. Besser's treating physicians suggests that Prudential's apparent conflict of interest had an effect on its decision to deny Mrs. Besser's claim, which Mrs. Besser should be entitled to explore through discovery. Further, irrespective of the aforementioned reasons, Mrs. Besser should be entitled to pursue discovery on the issue of Prudential's conflict of interest considering it is a conflicted administrator, consistent with the Ninth Circuit and sister district court opinions cited herein.

### 3. The Substantial Amount of The Monthly Benefit Mrs. Besser Is Entitled To Under The Plan In Conjunction With Prudential's Apparent Conflict of Interest Provides Reason To Allow Discovery On Conflict

The monthly benefit under the terms of the Plan is 60% of Mrs. Besser's monthly earnings, which may be reduced by deductible sources of income and disability earnings with a maximum monthly benefit amount of $20,000.000. (Exhibit "A").  The Plan defines monthly earnings as the "[A]verage gross monthly income from your Employer based on your W-2 for the year prior to your date of disability, plus your annualized base pay for the year in which you incur your disability." *Id*. Mrs. Besser's 2003 W-2 reported earnings, Exhibit "K" attached,

totals $309,542.56, which would provide a monthly benefit of approximately $15,477.00 minus any deductible income and disability earnings. Considering Prudential is the payor of benefits, it has incentive to deny Mrs. Besser's claim. Thus, Prudential's apparent conflict of interest coupled with the substantial monthly benefits at issue, warrants discovery to determine the existence, nature and extent that such conflict had on Prudential's decision in this case, which goes to the deference this Court will provide to Prudential's decision.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff, Sumiko Besser, respectfully requests this Court enter an Order granting Plaintiff's Motion for Discovery on the issue of Prudential's conflict of interest, and any other relief it deems necessary and just.

DATED:  January 9, 2008, Honolulu, Hawaii

/s/ Michael R. Cruise
_____
DANIELLE L. ROSEN, ESQ
MICHAEL R. CRUISE, ESQ
COLIN A. YOST, ESQ

Attorneys for Plaintiff
SUMIKO BESSER